IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ROBERT WILLIAM SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 324-085 |
| | ) | |
| DEPUTY WARDEN VERONICA STEWART and DR INVESTIGATOR LT. BRANCH, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Plaintiff, incarcerated at Telfair State Prison in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.    SCREENING THE COMPLAINT**

    **A.    BACKGROUND**

In his complaint, Plaintiff names as Defendants: (1) Deputy Warden Veronica Stewart, and (2) DR Investigator Lt. Branch. (Doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On April 5, 2023, Plaintiff was emergency transferred to Telfair State Prison after an incident took place at his previous facility, Macon State Prison. (Id. at 5, 7.) Upon arrival,

Telfair State Prison officers searched Plaintiff's property and located a "hacksaw blade." (Id. at 5, 9.) Officers informed Plaintiff of their discovery and showed him a black and white photocopy of the hacksaw blade at issue. (Id. at 5, 10.) However, Plaintiff did not know where the hacksaw blade came from because he had not packed his own property before the emergency transfer, and he did not possess such an item. (Id. at 5, 10.) Plaintiff attempted to explain the situation regarding the Macon State Prison incident, in which other inmates and officers with whom Plaintiff "had an altercation" had been in possession of his property, to no avail. (Id. at 10.) Plaintiff was then placed in segregation and charged with possession of an escape device and contraband. (Id. at 5, 10; see also id. at 27.)

Plaintiff never received a copy of the hacksaw blade picture initially shown to him, nor did he receive a copy of an incident report or disciplinary report. (Id. at 10.) Plaintiff did not hear anything about the disciplinary proceedings until April 26, 2023, when Defendant Branch visited Plaintiff's cell to ask him if he was interested in taking a plea. (Id.) Plaintiff informed Defendant Branch he had not received a copy of the disciplinary report and would not sign anything without first receiving this information. (Id.) Plaintiff also told Defendant Branch he had not received any legal information about the specific standard operating procedures and statutes "pertaining to the time allowed by law to give and receive [d]isciplinary reports." (Id. at 11.) Plaintiff's statements were ignored, and instead Defendant Branch told Plaintiff that Defendant Stewart would be notified of Plaintiff's "disregard" for and "unwillingness to cooperate" in the disciplinary proceedings. (Id.)

A few hours later, Defendant Stewart came to Plaintiff's cell to tell Plaintiff that she had found him "guilty for all labeled offenses" and sanctioned him to "90 Everything," which is the maximum punishment allowed. (Id. at 5, 11-12.) Defendant Stewart then provided

Plaintiff with an appeal form.  (Id. at 12.)  Plaintiff refused to take the appeal form and refused to sign "her ruling."  (Id.)  Defendant Stewart pushed the appeal form through the cell door and left.  (Id.)  Plaintiff does not report ever having received a hearing for the disciplinary charges or his placement in segregation.  (See generally doc. no. 1.)

Following this incident, Defendant Stewart put a "memo" in Plaintiff's file instructing prison officials that Plaintiff should not be released from segregation and not to provide Plaintiff with "anything" due to Plaintiff's non-compliance.  (Id. at 14.)  Plaintiff has been in segregation for eighteen months as a result.  (Id.)  Plaintiff has appealed his housing in segregation, and pursuant to a 90-day review memo, he has "earned the privilege" to be reassigned to different housing.  (Id. at 14, 23.)  However, he was told that he cannot be released from segregation, per Defendant Stewart's instructions.  (Id.; see also id. at 20.)  In segregation, Plaintiff cannot see the outside world and is forced to hear other inmates fighting one another, being injured, and even being murdered or killing themselves.  (Id. at 14-15.)  Plaintiff has only been offered recreation time in the yard five times since April 2023, is only permitted to shower three times a week, and is on lockdown 24/7.  (Id. at 14.)  As a result of his confinement in segregation, Plaintiff had "to be put on [the] mental health caseload and [be] prescribed medication due to [his] inability to sleep[] and constant paranoia."  (Id. at 15.)

For relief, Plaintiff seeks to have the disciplinary report dismissed, a cease-and-desist order for any additional action taken by Defendant Stewart against him, and monetary compensation.  (Id. at 13.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has

3

arguably stated a viable procedural due process claim against Defendants.[1] See Quintanilla v. Bryson, 730 F. App'x 738, 743 (11th Cir. 2018) (*per curiam*) ("To make out a denial-of-procedural-due-process claim under § 1983 a plaintiff must establish three elements: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." (citing Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003))); O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (*per curiam*) ("[P]risoners must receive: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action." (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974))); Wallace v. Hamrick, 229 F. App'x 827, 829-31 (11th Cir. 2007) (*per curiam*) (finding prisoner plaintiff sufficiently alleged a protected liberty interest and a deprivation of due process to state a claim for a due process violation to survive initial screening).

The Court further finds Plaintiff has arguably stated a viable Eighth Amendment claim regarding the conditions of his confinement. See Wade v. McDade, 106 F.4th 1251, 1262 (11th

---

[1] In his complaint, Plaintiff seeks to bring claims on the following grounds: "retaliation, cruel and unusual punishment, deliberate indifference, and false imprisonment." (Doc. no. 1, pp. 13, 15.) However, based on the facts alleged regarding his continued placement in segregation without receiving certain procedural protections, the Court liberally construes Plaintiff's complaint as alleging a procedural due process claim and a conditions of confinement claim. See Johnson v. Bobbitt, No. 6:20-cv-76, 2020 WL 13921598, at *2 (S.D. Ga. Dec. 28, 2020) (liberally construing Plaintiff's claim for "[f]alse imprisonment, cruel and unusual punishment, negligence" as a procedural due process claim), *adopted by* 2021 WL 354418 (S.D. Ga. Feb. 2, 2021); Griffith v. Silvers, No. 4:20-cv-10095, 2020 WL 13847991, at *5 (S.D. Fla. Dec. 21, 2020) ("The Eleventh Circuit has held that a § 1983 claim based on false imprisonment may be made under the Due Process Clause of the Fourteenth Amendment (citing Cannon v. Macon Cnty., 1 F.3d 1558, 1562-63 (11th Cir. 1993), *modified on other grounds by* 15 F.3d 1022 (1994))), *adopted by* 4:20-cv-10095, doc. no. 21 (S.D. Fla. Jan. 27, 2021). Nonetheless, to the extent Plaintiff intends to bring a retaliation claim the Court recommends dismissal of this claim by companion Report and Recommendation.

Cir. 2024) (*en banc*); Sheley v. Dugger, 833 F.2d 1420, 1429 (11th Cir. 1987) ("In addition to the mental and physical deterioration he alleges, [plaintiff's] Eighth Amendment claim is supported, at this stage of the litigation, by his contention that his confinement in [close management] is punitive in nature."); Gillis v. Smith, No. 5:22-CV-027, 2022 WL 1516311, at *12 (M.D. Ga. May 13, 2022) (allowing conditions of confinement claim to proceed where plaintiff was in segregation for "nearly eight months and that these conditions caused him to 'contract[ ] gastritis by way of a stressful punitive segregation'"), *adopted by* 2022 WL 2287929 (M.D. Ga. June 24, 2022).

Accordingly, process shall issue as to the above-described claims. In a companion Report and Recommendation, the Court recommends dismissal of Plaintiff's claim for retaliation, as well as all official capacity claims for monetary damages.

## II.   INSTRUCTIONS

**IT IS HEREBY ORDERED** service of process shall be effected on Defendants Branch and Stewart. The United States Marshal shall mail a copy of the complaint, (doc. no. 1), and this Order by first-class mail and request that Defendants waive formal service of the summons. Fed. R. Civ. P. 4(d). Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver. Fed. R. Civ. P. 4(d)(2). A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within ninety days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case. Fed. R.

Civ. P. 4(m).  Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate Defendants Branch and Stewart to effect service.

**IT IS FURTHER ORDERED** Plaintiff shall serve upon the defendants, or upon their defense attorney(s) if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court.  Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendant or their counsel.  Fed. R. Civ. P. 5; Loc. R. 5.1.  Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number.  Fed. R. Civ. P. 10(a).  Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendants.  Upon being given at least five days notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action.  Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.  The defendants shall ensure Plaintiff's deposition and any other depositions in the case are taken <u>within the 140-day discovery period</u> allowed by this Court's Local Rules.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution.  Fed. R. Civ. P. 41; Loc. R. 41.1.  If Plaintiff wishes to obtain facts and information about the case from the defendants, Plaintiff must initiate discovery.  <u>See generally</u> Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery).  Plaintiff should begin discovery promptly and complete it

6

within four months after the filing of the first answer of a defendant named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's

statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

**While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.**

SO ORDERED this 21st day of March, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA